## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL SERVICES CORPORATION, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | No. 10 C 6725 |
| REGINALD ALEXANDER, | ) ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Appellant Consumer Financial Services Corporation's (CFS) appeal from the ruling of the bankruptcy court in bankruptcy case number 10 B 15686. For the reasons stated below, this court affirms the bankruptcy court.

## BACKGROUND

On April 6, 2010, CFS repossessed Appellee Reginald Alexander's (Debtor) car (Car). On April 9, 2010, Debtor filed for Chapter 13 Bankruptcy. Debtor claims that he immediately requested the return of the Car pursuant to the automatic bankruptcy stay. According to Debtor, CFS initially refused to return the Car, unless Debtor paid the repossession costs and storage fees. Debtor contends that he then

1

informed CFS that if the Car was not immediately returned, he would file a motion for sanctions with the bankruptcy court. CFS allegedly failed to return the Car and on April 14, 2010, CFS instead filed an Emergency Motion to Annul the Automatic Stay (Motion to Annul). Debtor then filed a Motion for Sanctions, based on CFS's failure to immediately return the Car. CFS then allegedly agreed, on April 17, 2010, to return the Car, but conditioned the return on the withdrawal of the Motion for Sanctions.

On April 16, 2010, the parties appeared before Chief Judge Doyle, sitting in place of Judge Squires, on CFS's Motion to Annul. On April 20, 2010, the parties again appeared before Chief Judge Doyle, and Chief Judge Doyle set a status hearing for April 23, 2010, indicating that she might hold an evidentiary hearing. On April 23, 2010, Chief Judge Doyle concluded that an evidentiary hearing was not necessary and that CFS had willfully violated the automatic bankruptcy stay. Chief Judge Doyle also denied CFS's Motion to Annul and ordered the immediate return of the Car.

On July 9, 2010, the parties appeared before Judge Squires on the Motion for Sanctions, and Judge Squires gave the parties time for additional briefing on the motion. On August 27, 2010, the parties appeared before Judge Squires, and he granted the Motion for Sanctions since CFS had willfully violated the automatic bankruptcy stay. Judge Squires ordered CFS to pay Debtor $200.00 in actual damages, $3,038.75 in attorneys' fees, and $9,600.00 in punitive damages. CFS appeals from the August 27, 2010 ruling by Judge Squires granting the Motion for

2

Sanctions.  CFS also appeals the ruling by Chief Judge Doyle finding that CFS had willfully violated the automatic bankruptcy stay.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court.  *Id.*  On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard.  *Wiese v. Community Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009)(stating that the court "review[s] the bankruptcy court's determinations of law *de novo* and findings of fact for clear error," but "where the bankruptcy code commits a decision to the discretion of the bankruptcy court, we review that decision only for an abuse of discretion"); *see also In re A-1 Paving and Contracting, Inc.,* 116 F.3d 242, 243 (7th Cir. 1997)(stating that a "bankruptcy court's findings of fact are upheld unless clearly erroneous and the legal conclusions are reviewed *de novo*").  Where there are mixed questions of law and fact, the district court conducts a *de novo* review.  *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

## DISCUSSION

CFS contends that it did not violate the automatic bankruptcy stay and that if it did violate the stay, Debtor did not show that it was a willful violation.  CFS also contends that the sanctions were not warranted, contending that Debtor had failed to

establish actual damages or show that punitive damages were warranted. Pursuant to

11 U.S.C. § 362(a), when a bankruptcy petition is filed, there is an immediate

"automatic stay of efforts outside the bankruptcy proceeding to collect debts from the

bankrupt debtor." *In re Radcliffe*, 563 F.3d 627, 630 (7th Cir. 2009)(explaining that

"[b]ringing all debts within the jurisdiction of the bankruptcy court allows for the

orderly distribution of assets"). The automatic bankruptcy stay "operates as a stay . .

. of" actions, such as "any act to obtain possession of property of the estate or of

property from the estate or to exercise control over property of the estate. . . ." 11

U.S.C. § 362(a)(3). In regard to the recovery of damages for a violation of the

automatic bankruptcy stay, 11 U.S.C. § 362 provides the following:

> (k)(1) Except as provided in paragraph (2), an individual injured by any
> willful violation of a stay provided by this section shall recover actual
> damages, including costs and attorneys' fees, and, in appropriate
> circumstances, may recover punitive damages.
> (2) If such violation is based on an action taken by an entity in the good faith
> belief that subsection (h) applies to the debtor, the recovery under paragraph
> (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k).

I. Willful Violation of Automatic Bankruptcy Stay

    CFS argued that Chief Judge Doyle erred in finding that CFS willfully

violated the automatic bankruptcy stay.

    A. Basis for Annulment of Automatic Bankruptcy Stay

    CFS contends that it had a legitimate basis for moving to annul the automatic

bankruptcy stay.  According to CFS, Debtor was not acting in good faith when he

filed for Chapter 13 Bankruptcy.  CFS contends that it therefore appropriately

refused to immediately return the Car to Debtor after he filed for bankruptcy.  In

*Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009),

the Seventh Circuit held that "the act of passively holding onto an asset constitutes

'exercising control' over it, and such action violates" the automatic bankruptcy stay.

*Id.* at 703.  In *Thompson*, a creditor had "exercised control over [the debtor's

repossessed] vehicle when [the creditor] refused to return it to the bankruptcy estate

upon request," and the Court held that the creditor violated the automatic bankruptcy

stay.  *Id.*  As Chief Judge Doyle properly noted at the April 23, 2010 hearing, when a

debtor files for Chapter 13 Bankruptcy, a creditor cannot delay the return of a

repossessed vehicle by seeking an annulment of the automatic bankruptcy stay.

(4/23/10 Tr. 11).  Chief Judge Doyle correctly concluded that a creditor cannot avoid

the clear mandate in *Thompson* to return a repossessed vehicle to a debtor and a

creditor cannot make an "end-run" around the holding in *Thompson* by delaying the

return of the vehicle and filing a motion to annul the stay.  (4/23/10 Tr. 11)**.**

     Nor was it necessary for CFS to bring the Motion to Annul in order to protect

its asset.  As the Court noted in *Thompson*, there is a procedure available under 11

U.S.C. § 362(f), which allows a creditor to seek to protect its assets on an emergency

basis.  *Thompson*, 566 F.3d at 707.  CFS, however, failed to pursue such a motion

under 11 U.S.C. § 362(f).  CFS, by retaining the Car while it sought to have other

issues resolved by the bankruptcy court, engaged in the type of conduct that is

addressed by the Court in *Thompson*. The Court in *Thompson* stated that "allowing the creditor to maintain possession of the asset until it subjectively feels that adequate protection is in place, or until the debtor moves for the asset's return, unfairly tips the bargaining power in favor of the creditor." *Id.* Thus, even if CFS believed that it had a legitimate basis to seek an annulment of the automatic bankruptcy stay, that would not have justified CFS's actions in retaining the Car. CFS also contends that the bankruptcy court should have conducted an evidentiary hearing in order to determine whether Debtor filed for bankruptcy in good faith. (Applt. 21). The bankruptcy court properly concluded that an evidentiary hearing was not necessary, since whether or not Debtor was proceeding in good faith was not material to assessing whether CFS had complied with *Thompson* and returned the Car to Debtor in a timely fashion. The bankruptcy court properly found that CFS's actions had violated the automatic bankruptcy stay.

### B. Willfulness of Violation

CFS also contends that, if it did violate the automatic bankruptcy stay, the bankruptcy court erred in finding that CFS willfully violated the automatic bankruptcy stay. CFS contends that it was only a "[t]echnical" violation of the automatic bankruptcy stay. (Applt. 19). In order for there to be a willful violation of the automatic bankruptcy stay, there does not have to be a "specific intent to violate the stay. . . ." *In re Radcliffe*, 563 F.3d at 631. A violation is deemed to be willful if a "creditor takes questionable action despite the awareness of a pending bankruptcy

6

proceeding." *Id.*; *see also In re Will*, 303 B.R. 357, 363 (Bankr. N.D. Ill.

2003)(stating that "[t]o determine whether [a] violation was willful under § 362(h),

. . . the Court must inquire whether [the creditor] (1) had actual knowledge of [the

debtor's] Chapter 13 case and (2) committed a deliberate act when its agents

repossessed the" vehicle). In the instant action, the record establishes that CFS was

immediately made aware of the Chapter 13 bankruptcy filed by Debtor on April 9,

2010. The record indicates that Debtor immediately requested the return of the Car

in accordance with *Thompson*. The record also indicates that CFS attempted to place

conditions upon Debtor for the return of the Car and then filed the Motion to Annul

instead of returning the Car. The record further indicates that CFS did not return the

car until ordered to do so on April 23, 2010. Thus, the record shows CFS's

knowledge of the automatic bankruptcy stay and a deliberate exercise of control over

the Car in violation of the automatic bankruptcy stay and the holding in *Thompson*.

CFS's contention that it had a meritorious motion to annul the stay does not excuse

its actions. *See In re Biesboer*, 2010 WL 2940927, at *2 (Bankr. N.D. Ill.

2010)(stating that "[w]illfulness can be found even if the creditor believed himself

justified in taking the actions found to violate the stay").

CFS also argues that "[t]he emergency motion was warranted and not a willful

violation of the automatic stay." (Reply 6). While it is true that the filing of the

Motion to Annul did not violate the automatic bankruptcy stay, it was CFS's decision

not to return the Car to Debtor after Debtor filed for bankruptcy that was the willful

violation of the automatic bankruptcy stay.  The bankruptcy court correctly

concluded that, based on the record before it, there was a willful violation of the

automatic bankruptcy stay.

II.  Sanctions Amounts

CFS contends that Debtor failed to show that the attorneys' fees were

recoverable.  CFS also argues that Debtor failed to establish $200 in actual damages,

failed to show that punitive damages were appropriate, and failed to properly

calculate the punitive damages.

A.  Attorneys' Fees

CFS argues that the attorneys' fees awarded as sanctions were not recoverable.

CFS contends that "[t]he attorneys for the Debtor are probably working on a

contingency fee basis," and that the bankruptcy court "awarded attorney's fees for

bringing an adversary proceeding that [the bankruptcy court] said was unnecessary."

(Applt. 18).  CFS, despite being given the opportunity, failed to raise its argument

concerning a contingent fee at the August 27, 2010 hearing.  At the August 27, 2010

hearing, the bankruptcy court was presented with detailed billing records showing

that the fees were reasonable.  CFS has not presented any evidence to show that the

records provided by Debtor were inaccurate.   Judge Squires also properly concluded

that the fees related to the filing of the adversary action were recoverable as well.

The bankruptcy court thus properly concluded that the $3,038.75 in attorneys' fees were recoverable.

### B. Actual Damages

CFS also argues that Debtor failed to establish $200 in actual damages with a reasonable certainty. Debtor filed an affidavit with the bankruptcy court, indicating that he lost $200 in wages during the time period that CFS wrongfully withheld the Car from Debtor. CFS argues that Debtor had indicated that he makes $300 a month in his job and that he had not substantiated his claim to have made $200 in two weeks. (Applt. 18). While on average Debtor may have made $300 a month, Debtor filed an affidavit stating that during the 14 days that CFS wrongfully withheld the Car, Debtor missed two teen youth facilitative presentations and that he gets paid $100 per presentation. (Debtor Aff. 6-7). CFS argues that Debtor should have provided pay receipts to the court, but CFS does not cite authority that specifically requires such evidence for establishing damages for lost wages. The bankruptcy court properly calculated actual damages based on Debtor's sworn affidavit that he missed two presentations. In addition, this court notes that the record does not reflect that CFS raised this objection at the August 27, 2010 hearing. The bankruptcy court properly credited Debtor's sworn contentions as to lost wages, and CFS has not produced any evidence to call the amount of lost wages claimed by Debtor into question.

C.  Punitive Damages

CFS also argues that Debtor had not shown that punitive damages were warranted, and that the bankruptcy court improperly calculated the proper amount of punitive damages.

1.  Award of Punitive Damages

CFS argues that Debtor had to show more than a willful violation of the automatic bankruptcy stay in order to obtain punitive damages.  Pursuant to 11 U.S.C. § 362(k), a court can award punitive damages "in appropriate circumstances. . . ." *Id.*  In deciding whether punitive damages are warranted, a court should consider factors such as: "'(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor.'" *In re Thompson*, 426 B.R. 759, 768 (Bankr. N.D. Ill. 2010)(stating that "[p]unitive damages do not compensate a plaintiff for losses; rather, 'they are aimed at deterrence and retribution'")(quoting in part *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003)).  In order to award punitive damages, such an award "'must be supported by the record and may not constitute a windfall to the prevailing party.'"  *In re Thompson*, 426 B.R. at 768 (quoting *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1352 (7th Cir. 1995)).

In the instant action, Debtor explained the request for punitive damages at the

August 27, 2010 hearing.  Debtor sought punitive damages to deter creditors such as

CFS from circumventing the holding in *Thompson* by engaging in the series of

delays CFS chose to engage in.  This court agrees that, based on the record, CFS

clearly disregarded the automatic bankruptcy stay and the holding in *Thompson* and

that therefore, punitive damages were warranted.  CFS could and should have

returned the Car to Debtor as soon as the bankruptcy was filed.  Instead, CFS made

the conscious choice to delay the return of the Car, attempt to place conditions upon

Debtor for the return of the Car, and file the Motion to Annul.  Punitive damages

were an appropriate additional punishment for CFS to deter CFS and other creditors

from engaging in dilatory measures relating to the return of repossessed vehicles to

debtors.  Also, there is no indication in the record that CFS is unable to pay the

punitive damages.  Based on the record, the bankruptcy court properly awarded

punitive damages.


2.  Amount of Punitive Damages

CFS argues that the bankruptcy court erred in calculating the proper amount of

punitive damages.  The bankruptcy court decided that the proper amount of punitive

damages would be three times the total of the $200 in damages for lost wages and the

approximately $3,000 in attorneys' fees.  (8/27/10 Tr. 14).  CFS contends that the

bankruptcy court, in multiplying the damages by three, should only have considered

the $200 and not the attorneys' fees.  CFS argues that only the $200 were actual

damages. However, 11 U.S.C. § 362(k), makes clear that attorneys' fees are part of actual damages, indicating that a debtor can "recover actual damages, including costs and attorneys' fees. . . ." *Id.* The attorneys' fees were fees that were in fact incurred by Debtor as a result of CFS's actions, and thus are properly considered as actual damages. CFS has not shown that the bankruptcy court erred in calculating the punitive damages award. Therefore, based on the above, this court affirms the bankruptcy court.

## CONCLUSION

Based on the foregoing analysis, this court affirms the bankruptcy court.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: February 24, 2011